**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**DOCKET NO. 5:18-CR-047-FDW-DCK**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND RECOMMENDATION** |
| | ) | |
| | ) | |
| **QUENTIN LEE CURRUTH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant's "Motion To Suppress Fruits Of Unlawful Search" (Document No. 13); and the Government's "Response In Opposition to Defendant's Motion to Suppress" (Document No. 18). Having carefully considered the briefs, the evidence presented at a hearing, the oral arguments of counsel, and the applicable law, the undersigned will respectfully recommend that Defendant's motion be denied.

## I. PROCEDURAL BACKGROUND

In a "Bill of Indictment" (Document No. 1) returned August 22, 2018, Defendant Quentin Lee Curruth ("Defendant") was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On December 27, 2018, Defendant filed his "Motion to Suppress Fruits of Unlawful Search" (Document No. 13) and a memorandum in support of that motion (Document No. 14). On January 17, 2019, the United States filed its "Response In Opposition To Defendant's Motion To Suppress" (Document No. 18). The Court conducted a hearing on this matter on February 13, 2019, at which evidence and arguments were presented.

## II. FACTS

The evidence presented at the February 13, 2019 hearing was largely uncontroverted. The Government presented the sworn testimony of three witnesses: Detective Donald Murray of the Statesville Police Department; Investigator Devin Schenz of the Statesville Police Department; and Special Agent Shawn Greene of the North Carolina State Bureau of Investigation. Defendant presented the sworn testimony of Defendant's brother, Quience Curruth. Evidence also included cross-examination of the witnesses, as well as documentary and photographic exhibits.

Detective Donald Murray testified that he had a total of 15 years experience on the Statesville Police Department, seven as a detective. In late 2017 and early 2018, Detective Murray participated in an investigation involving a residence at 639 Harrison Street in Statesville, North Carolina. Based on three controlled purchases of cocaine by a confidential informant from a Patrick Curruth at that house, a search warrant ("Search Warrant") was obtained. Detective Murray described the protocol for managing the confidential informant's participation in these controlled purchases. The Search Warrant was issued by a state official on February 8, 2018.

The Search Warrant was served on Friday, February 9, 2018, between 8:50 AM and 9:00 AM. It was Detective Murray's understanding that Patrick Curruth and Quience Curruth lived at the address. Murray described the street as a "very low driven upon roadway," and thus stated that it was difficult to maintain physical surveillance on the address in advance of the search. Murray described that there were three cars in the driveway at the time of the search, which ran up the right side of the house. Murray led the team that served the warrant. Officers were armed and dressed in SWAT attire, including tactical vests. After knocking and announcing, the team

breached the door with a battering ram, and Murray was the first or second officer to enter the house.

Upon entry, Murray immediately saw Defendant on a couch in the living room, where he appeared to be getting up from a lying position. Defendant was calm and cooperative, and he remained seated on the sofa for the remainder of the search. Defendant was placed in handcuffs; a weapons frisk was conducted, and no weapons were found on his person. Defendant stated to Detective Murray that he had been sleeping on the couch and he had been staying there. Patrick Curruth was promptly located in a back bedroom of the house. Officers read the Search Warrant to Defendant and Patrick Curruth. Murray testified that Quience Curruth arrived later during the search of the residence.

Near the sofa in the living room on which Defendant had been sleeping was a table. Items located on that table included one set of car keys (later determined to be for a Jeep vehicle in the driveway), two cell phones, a remote control device for an apparent video game, and a Coca Cola bottle. In the same living room on the wall next to the front door was a hook on a small placard that read "keys." Officers located an additional set of keys on that hook (later determined to be for the blue Cadillac vehicle in the driveway). These Cadillac keys were the only keys located on the hook by the front door.

The house had a total of three bedrooms: one bedroom was found to contain the person of Patrick Curruth and documents associated with him; another contained documents bearing the name of Quience Curruth and was believed to be his bedroom; and a third contained children's items and was believed to be the bedroom used by Quience Curruth's children. No mail addressed to Defendant was located in the home, and Defendant did not appear to have a bedroom at the residence.

Detective Murray testified that in addition to the house itself, the cars on the property were searched. A blue Cadillac was parked in the driveway closest to the street. When Quience Curruth arrived, he parked his Honda vehicle on the street before coming into the house. (The other cars in the driveway were a Chevy Caprice and a Jeep.) No steps were taken by Detective Murray to determine who the owners of the cars were prior to the vehicle searches being conducted. Murray testified that the Cadillac would have been accessible to Patrick Curruth or any other resident of the home. Murray stated he thought the language of the Search Warrant gave authority for the search of the vehicles:

> **Vehicles to be searched**: Any vehicle located on the curtilage of the property to be searched owned or under the apparent control of Patrick Maurice Anto Curruth, those found to reside at or be in apparent control of 639 Harrison Street, Statesville, N.C. 28677.

Detective Murray confirmed in his testimony that a firearm was located during the search of the blue Cadillac. (This is the firearm that provides the basis for Defendant's charge in this case.) He also testified that officers seized an assault style rifle with a drum magazine from Quience Curruth's bedroom, along with a digital scale. Patrick Curruth was observed by officers dropping a Crown Royal bag containing approximately 54 grams of cocaine, a digital scale, and additional baggies; these items were seized. Additional firearms were located on top of the refrigerator in the house and in the center console of the Honda vehicle Quience Curruth was driving.

Next to testify for the Government was Investigator Devin Schenz of the Statesville Police Department. Investigator Schenz testified that he has been with the Statesville Police Department since July of 2012, and is currently assigned to the Violent Crimes Unit. Schenz testified that he initially played a support role as a perimeter officer during service of the Search Warrant at 639 Harrison Street on February 9, 2018. Once the persons inside the residence were

secured, Schenz assisted with the search, particularly the search of the vehicles. Schenz testified that there were three cars in the driveway – a Chevy Caprice, a Jeep, and a blue Cadillac.

Schenz described the search of the vehicles. He stated that he did not make any effort to determine who the owners of the cars were because the vehicles were "on the curtilage" of the residence. Schenz testified that he was not able to get into the Chevy Caprice, but that he was able to enter the Jeep using a key from inside the house. Nothing of evidentiary value was found in the Jeep. He next searched the blue Cadillac, again with a key that came from inside the house. The key was brought to him by another officer. Schenz described the Cadillac as being in the driveway about "15 or 20 feet from the front porch area" of the home. A firearm was located in the glove box.

The Government also presented the testimony of Special Agent Shawn Greene of the North Carolina State Bureau of Investigation. Agent Greene testified he had been with the SBI for a little over 18 years. He spent 11 years as a firearms and tool mark examiner in the SBI crime laboratory and now serves as a criminal investigator. Agent Greene testified that he assisted with service of the Search Warrant on February 9, 2018 as well. Like Investigator Schenz, Agent Greene was initially assigned a perimeter position when the warrant was served. Once things were secure, Agent Greene went around to the front of the house and assisted with the search, principally the search of the blue Cadillac. He described the vehicle as being within 30 yards of the front door of the home and characterized it as "accessible to anybody within the home." He was present when Investigator Schenz found the firearm in the glove box.

Defendant presented the testimony of his brother, Quience Curruth. Because he currently faces state charges arising from this incident, Quience Curruth was advised by the Court of his rights under the Fifth Amendment; he agreed to testify under oath. Quience Curruth testified

that as of February 9, 2018, he had lived at 639 Harrison Street in Statesville for about a year and a half. He works as a production lead at Cintas, and he has no criminal convictions for felony or misdemeanor offenses. He rents the house at 639 Harrison Street, and his name is on the lease. As of the date of the search, February 9, 2018, he lived in the house with his kids and his youngest brother, Patrick, who was recently released from prison. Curruth testified that Defendant did not live at the house, but lived nearby with his girlfriend.

Quience Curruth did testify that Defendant came over to the house "a few times a week." When asked how often Defendant would stay the night, Curruth responded, "not often." Quience Curruth testified that Defendant would feel free to drop in if he thought Curruth might be home. Quience Curruth further testified that Defendant did in fact stay the night on the evening of Thursday, February 8, 2018, the night before the search. Quience Curruth explained that Defendant may have stayed the night because he had been drinking a little that evening, and because he didn't have a license to drive.

The next morning, Quience Curruth was at work when he received word by phone of the search, and he returned home. He parked his Honda on the street near the house, approached the house, and encountered law enforcement officers. At the time Quience Curruth arrived, officers were searching the house. Quience Curruth told officers that he and his kids and Patrick Curruth lived at the house, and that Defendant had spent the night. Quience Curruth testified that the officers never asked who the various cars belonged to prior to the searching the vehicles. He also stated that he told the officers where the keys were, in part so that they would not damage the cars while gaining entry. Quience Curruth confirmed that the blue Cadillac keys were on the hook by the front door; he testified "there's where I had all the keys at."

In an unexpected revelation, Quience Curruth testified that the blue Cadillac had actually been in the driveway for some time as of the date of the search. Defendant and his girlfriend couldn't keep the car at the girlfriend's house, and it had actually been in the driveway for "a couple weeks." In fact, Quience Curruth testified that the Cadillac remained at the house after the search up until "a few weeks" before the hearing. Quience Curruth further testified that the keys to the Cadillac remained at the house, where he had access to them, usually on the hook next to the front door. This way, Quience Curruth, or his brother Patrick Curruth, could have moved the Cadillac had they needed to at any time.

## III. DISCUSSION

The question presented by Defendant's "Motion To Suppress …" (Document No. 13) is whether law enforcement officers exceeded the scope of the Search Warrant they served at 639 Harrison Street in Statesville, North Carolina on February 9, 2018. Specifically, Defendant asserts that the search of a blue Cadillac vehicle at that location, resulting in the seizure of a firearm from the glove box, was outside the scope of the Search Warrant and therefore unconstitutional. Defendant seeks to suppress the firearm, which is the basis of his 922(g) charge. Respectfully, in part based on some surprises related to the facts as presented at the hearing, the Court cannot agree.

Defendant's position is simple enough; and it certainly started out as more interesting than it ended up being at the conclusion of the hearing. Defendant, through his counsel Mr. Davis, pointed out that the language of the Search Warrant here is critical and reads as follows regarding the search of the vehicles:

> **Vehicles to be searched**: Any vehicle located on the curtilage of the property to be searched owned or under the apparent control of Patrick Maurice Anto Curruth, those found to reside at or to be in apparent control of 639 Harrison Street, Statesville, N.C 28677

Defendant argues that the search of the blue Cadillac in this situation is not consistent with this language. Among other things, Defendant points out that he was an infrequent overnight guest and did not reside at the house; the Cadillac was parked in the driveway closest to the street; law enforcement officers made no efforts to determine the ownership of the cars at the location during the search; and the underlying drug investigation did not pertain to Defendant, but rather to Defendant's brother, Patrick Curruth. In short, Defendant claims the blue Cadillac was not "under the apparent control of … those found … to be in apparent control of 639 Harrison Street …" Defendant cites several cases in support, including United States v. Patterson, 278 F.3d 315, 318 (4th Cir. 2002) (a so-called premises warrant extends only to those vehicles "on the property or premises that are owned by or under the dominion and control of the premises owner or which reasonably appear to be so controlled"); and United States v. Borostowski, 775 F.3d 851, 864 (7th Cir. 2014) (declining to extend warrant's authority to vehicle on premises which belonged to defendant's visiting sister, "especially where that vehicle initially bore no known relationship to the target of the warrant or to any criminality").

In fairness to Defendant, and to his counsel, the testimony at the hearing did not present as forecast. Put plainly, the Government's primary theory in response is that the search of the blue Cadillac was proper because the vehicle was "on the curtilage," or because the vehicle was under the apparent control of someone in apparent control of the 639 Harrison Street address, specifically either Patrick or Quience Curruth, or even Defendant. Ironically, it was Quience Curruth's testimony that put the vehicle in question in the driveway two weeks before the search and months after the search, and placed its keys on the hook on the wall by the front door on a more or less permanent basis. (Even Mr. Davis was ultimately forced to observe in his closing

argument at the hearing that evidentiary developments seemed to suggest Defendant might not have a suppression argument, so much as a constructive possession argument on the merits.)

The Government has the much better argument on suppression on this record. Testimony established that Defendant visited the house a couple of days a week during the year and a half his brothers lived there. He stayed the night the evening immediately before the search was conducted. His girlfriend's car, in which he was often transported, was parked in the driveway a relatively short distance from the house. The keys to that car, a blue Cadillac, were hanging on a hook by the front door, where Quience Curruth testified he liked to keep car keys. The blue Cadillac had been in the driveway for a couple of weeks before the search and remained there for many months after the search. Quience and Patrick Curruth, who clearly lived at the house, absolutely had access to the vehicle, in part because Defendant's keys remained there; and Defendant certainly had access when he was visiting his brothers.

Defendant himself in his brief states that "the only question for the Court is whether the Search Warrant authorized officers to search the Cadillac." That is indeed the question, and the answer on these facts is yes. Based on this record, the only possible conclusion is that the blue Cadillac was *under the apparent control of someone in apparent control of 639 Harrison Street*. The search was proper.

The Court would add that the Government's resort to an alternative theory of reasonable reliance by officers on State v. Lowe, a decision of the North Carolina Supreme Court, is not necessary. That argument will be dispensed with as unnecessary to the Court's decision on the matter.

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that the search in this case was consistent with the language of the search warrant and applicable law. Respectfully, Defendant's argument is without merit.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant's "Motion To Suppress Fruits Of Unlawful Search" (Document No. 13) be **DENIED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: March 6, 2019

David C. Keesler
United States Magistrate Judge